**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

|  |  |
|---|---|
| DIRECTPACKET RESEARCH, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 2:18-cv-00331-AWA-RJK |
| POLYCOM, INC., | **[REDACTED VERSION]** |
| Defendant. | |

**DEFENDANT POLYCOM, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION
TO TRANSFER VENUE PURSUANT TO A VALID AND ENFORCEABLE
FORUM SELECTION CLAUSE**

## I.   INTRODUCTION

In 2010, defendant Polycom, Inc. ("Polycom") and directPacket, Inc. ("directPacket Inc.") d/b/a OneVision Solutions entered into a Reseller Agreement (the "U.S. Reseller Agreement") that ███████████████████████████████████████████ ██████████████████████████████████████████████████████ (Ex. 1 at § 12.6.)  directPacket Inc. is an alter ego of the plaintiff in this case, directPacket Research Inc. ("directPacket Research").  The U.S. Reseller Agreement remains in effect today.

Instead of selling its products directly to end-users, Polycom distributes its products through a network of resellers.  The U.S. Reseller Agreement enables directPacket Inc. to sell certain Polycom products throughout the U.S., including the same products accused of infringement in this case.  (Ex. 1 at §§ 1.8, 2.1, Exhibit A.)  Polycom also entered into additional state-specific Reseller Agreements from 2007-2016 with directPacket Inc. as well as directPacket Research similarly authorizing the sale of Polycom products.  These Reseller Agreements also ██████████████████████████████████████████████████

████████████████████   (*See* Ex. 2 at § 10.8; Ex. 3 at § 10.9; Exs. 4-5 at § 11.8; Exs. 6-7 at § 15(g)).)  As a reseller of the Polycom products accused in this litigation, Plaintiff is complicit in and a participant of the very conduct about which it now complains and has been for 9 years.

Because there is a genuine question of whether Polycom's alleged infringement is authorized in light of the reseller relationship with directPacket Inc., the disputes in this litigation indisputably arise from or relate to the U.S. Reseller Agreement.  Indeed, the U.S. Reseller Agreement and the parties' conduct thereunder supports or forms the basis of multiple Polycom equitable defenses, such as estoppel, acquiescence, laches, and unclean hands in this litigation. Because directPacket Inc., and therefore plaintiff directPacket Research, ███████████ ████████████████████████████████████████████████ ████████████████████████████████████, this patent infringement litigation should be transferred to the Northern District of California pursuant to 28 U.S.C. §1404(a).  While the Court previously denied Polycom's motion to transfer for convenience and in the interest of justice (*see* ECF No. 27), the valid and enforceable forum selection clause of the U.S. Reseller Agreement controls the analysis under 28 U.S.C. § 1404(a) for this Motion.

Forum selection clauses such as the one contained in the U.S. Reseller Agreement are presumptively valid and enforceable.  Applicable authority from federal courts in the Fourth and Ninth Circuit, as well as relevant authority from the California State Courts concerning the interpretation and construction of the U.S. Reseller Agreement confirm that the venue selection clause therein is mandatory, broadly construed to encompass patent litigation claims related to the Polycom products sold pursuant to its terms, and reasonable.  As such, it should be given controlling weight in evaluating whether transfer is appropriate.

Polycom therefore respectfully requests that the Court give appropriate force to the U.S. Reseller Agreement and its forum selection clause by granting the present motion and transferring this matter to the Northern District of California.

## II.    BACKGROUND

From April 19, 2007 to August 17, 2016, the parties 

. (*See* Ex. 1 at § 12.6; Ex. 2 at § 10.8; Ex. 3 at § 10.9; Exs. 4-5 at § 11.8; Exs. 6-7 at § 15(g)).)

(*See* Ex. 8.)

(*See* Exs. 2-8.)

The broadest of these Reseller Agreements is the U.S. Reseller Agreement, which authorized directPacket Inc. to sell Polycom products throughout the U.S. (Ex. 1 at Exhibit A.) Polycom and directPacket Inc. d/b/a One Vision Solutions entered into the U.S. Reseller Agreement on February 1, 2010, which appointed directPacket Inc. as a

(Ex. 1 at § 2.1.) Pursuant to § 1.8 and Exhibit A to the U.S. Reseller Agreement,

(*Id.* at § 1.8, Exhibit A.)

The U.S. Reseller Agreement

██████████████████████████████████████████████████

████████████  (*Id.* at § 8.1.)  The parties further agreed to the following  ████████

████████████



(*Id.* at 12.6.)  To date, the U.S. Reseller Agreement remains in effect.  ████████████

███████████████████████████████████████████████████

██████████████████████████████  (*See* Ex. 1 at § 12.6;

Ex. 2 at § 10.8; Ex. 3 at § 10.9; Exs. 4-5 at § 11.8; Ex. 6-7 at § 15(g)).)

Despite the terms of the U.S. Reseller Agreement and directPacket Inc.'s sale and

continued efforts to sell and support Polycom videoconferencing products, directPacket Inc.'s

alter ego, directPacket Research, filed the instant action in the Eastern District of Virginia on

June 21, 2018, alleging infringement of U.S. Patent Nos. 7,773,588 (the "'588 patent"),

7,710,978 (the "'978 patent"), and 8,560,828 (the "'828 patent") (collectively, the "Asserted

Patents").  (ECF No. 1 at ¶¶ 12-14.)  In the complaint, directPacket Research accused Polycom's

Video Border Proxy and RealPresence Access Director videoconferencing products of

infringement.  directPacket Inc., however, is authorized to and does sell those products under the

U.S. Reseller Agreement, and both directPacket Inc. and directPacket Research are authorized to

sell them under the various state-specific Reseller Agreements.  (*Id.* at ¶ 29.)

III.    **THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §1404(a) AND THE U.S. RESELLER AGREEMENT'S FORUM SELECTION CLAUSE**

Under 28 U.S.C. § 1404(a), "a district court may transfer any civil action to…any district or division to which all parties have consented." 28 U.S.C. §1404(a).  Where, as here, the parties' contract contains a valid forum selection clause, that clause "represents the parties' agreement as to the most proper forum," and should be given "controlling weight in all but the most exceptional cases" in evaluating a §1404(a) transfer motion.  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) ("*Atlantic Marine*").  "As a general matter, courts enforce forum selection clauses unless it would be unreasonable to do so."  *BAE Sys. Tech. Sol. & Servs. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470 (4th Cir. 2018).  A forum selection clause may be found unreasonable if:

> (1) [its] formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) [its] enforcement would contravene a strong public policy of the forum state.

*Albemarle Corp. v. Astrazeneca UK Ltd.*, 628 F.3d 643, 651 (4th Cir. 2010) (citing *Allen v. Llyod's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (summarizing relevant reasonableness considerations in evaluating forum selection clauses identified in *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972))).

The presumption of enforceability and validity applies where a forum selection clause is mandatory (*i.e.*, requiring litigation to occur in a specified forum) rather than permissive (*i.e.,* allowing litigation to occur in a specified forum, but not barring litigation elsewhere).  *Id.*  Although *Atlantic Marine* never addressed any distinction between "permissive" and "mandatory" forum selection clauses, district courts across the country have repeatedly limited

5

the *Atlantic Marine* framework to situations where the forum selection clause is mandatory. *See Cream v. Northern Leasing Sys.*, No. 15-cv-01208, 2015 U.S. Dist. LEXIS 100537, at *12-13 n.2 (N.D. Cal. July 31, 2015) (citing case law from several federal jurisdictions). Courts in California similarly consider whether a forum selection clause is mandatory or permissive in determining whether the *Atlantic Marine* framework applies. *See Verdugo v. Alliantgroup, L.P.*, 237 Cal. App. 4th 141, 147 n.2 (2015). A second relevant inquiry regarding the enforceability of a forum selection clause is whether the claims of the instant litigation fall within the scope of the clause. *See, e.g., Varnadore v. Nationwide Mut. Ins. Co.*, No. 3:13-cv-01777, 2013 U.S. Dist. LEXIS 119156, at *11-12 (D.S.C. Aug. 22, 2013).

The Fourth Circuit has held that "a federal court interpreting a forum selection clause must apply federal law in doing so" because where an agreement purports to "modify or waive the venue of a federal court, a forum selection clause implicates what is recognized as a procedural matter governed by federal law—the proper venue of the court." *Albemarle Corp. v. Astrazeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010). Where a forum selection clause contains a valid choice of law provision, such as those here governing the Reseller Agreements under the laws of the State of California, a court "must honor the forum selection clause 'as construed under the law specified in the agreement's choice-of-law provision.'" *Nitro Elec. Co. v. Altivia Petrochemicals, LLC*, No. 3:17-cv-2412, 2017 U.S. Dist. LEXIS 210776, at *5-6 (S.D.W.V. Dec. 22, 2017) (citing *Albemarle Corp.*, 628 F.3d at 650-51). This Court should therefore apply California state law in evaluating the U.S. Reseller Agreement and interpreting its provisions. The State of California similarly applies the standard set forth in *Bremen* in determining whether forum selection clauses are reasonable and should be enforced, *see Indymac Mortg., Inc. v. Reyad*, 167 F. Supp. 2d 222, 243 (D. Conn. 2001) (citing *Smith, Valentino &*

*Smith v. Superior Court*, 17 Cal. 3d 491 (1976)), and further requires that the clause maintain some "logical connection" with at least one of the parties or their transaction. *Verdugo v. Alliantgroup, L.P.*, 237 Cal. App. 4th 141, 147 (2015).

Here, the parties bargained for and agreed to litigate in California, not only in the U.S. Reseller Agreement, but also in multiple state-specific Reseller Agreements confirming their intent to litigate disputes related to the products now accused of infringement in California.  As such, directPacket Research cannot establish that enforcement of the parties' agreed upon forum selection clauses would be unreasonable.  *See Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (plaintiff bears the burden of proving a forum selection clause is unreasonable).  The Court should, therefore, honor the parties' bargain and transfer this case to the Northern District of California.

### A.    28 U.S.C. §1404(a) is the Proper Vehicle to Enforce the Forum Selection Clause in the U.S. Reseller Agreement

In *Atlantic Marine Construction Co.*, the Supreme Court confirmed that the appropriate way to enforce a forum selection clause pointing to an alternative forum is through the doctrine of *forum non conveniens*, or 28 U.S.C. §1404(a), which codified the concept.  571 U.S. at 60. Ordinarily, a court would weigh relevant convenience and public interest factors in evaluating whether transfer is appropriate under §1404(a).  *Id.* at 62-63.  Indeed, this Court previously declined to transfer this matter, finding that the relevant convenience factors did not strongly favor transfer.  (*See* ECF No. 27 at 8.)

The standard convenience calculus changes, however, when the parties' contract contains a valid forum-selection clause, which "requires district courts to adjust their usual §1404(a) analysis" in two ways that are relevant to this analysis.  *Atl. Marine Constr. Co.*, 571 U.S. at 63. First, directPacket Research's choice of forum, which was entitled to "substantial weight" in the

Court's previous analysis (ECF No. 27 at 6) "merits no weight" in light of the U.S. Reseller Agreement's forum selection clause because directPacket Research already "effectively exercised its 'venue privilege'" when it agreed to and continued to renew the Governing Law and Venue provision of the U.S. Reseller Agreement. *Atl. Marine Constr. Co.*, 571 U.S. at 63-64.  Second, a court evaluating a §1404(a) motion based on a forum selection clause "should not consider arguments about the parties' private interests" because "parties waive the right to challenge the preselected forum as inconvenient or less convenient" when they agree to a forum selection clause. *Id.* at 64.

The Governing Law and Venue provision of the U.S. Reseller Agreement unambiguously requires ████████████████████████████████████████ ████████████████████████████████████ (Ex. 1 at § 12.6.)  Because, as described below, this dispute involves defenses that arise from or relate to the U.S. Reseller Agreement, and the respective forum selection clause is mandatory and reasonable, directPacket Research was required to bring the instant patent infringement lawsuit in the Northern District of California. *See* 28 U.S.C. §§ 1331, 1338.

Because there is no time limit on filing a §1404(a) motion to transfer, Polycom is entitled to raise the issue at this time. *See CIVIX-DDI, LLC v. Loopnet, Inc.*, No. 2:12-cv-2, 2012 U.S. Dist. LEXIS 123821, at *23 (E.D. Va. Aug. 30, 2012) ("there is no time-limit on the filing of a motion to transfer").  Further, courts have routinely confirmed that a party need not raise §1404(a) concerns in its responsive pleadings or Rule 12 motions and does not waive the ability to subsequently file a §1404(a) motion. *See, e.g., Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 835-36 (N.D. Cal. 2018) (noting *Atlantic Marine* "explicitly rejects [plaintiff's] contention that [defendant] was required to challenge [plaintiff's] choice of venue as 'improper' in order to

enforce the forum selection clause"); *GuideOne Elite Ins. Co. v. Mount Carmel Ministries*, No. 120-cv-037, 2018 U.S. Dist. LEXIS 5152, at *3 (S.D. Miss. Jan. 11, 2018; *Smith v. Yeager*, 234 F. Supp. 3d 50 (D.D.C. 2017); *McGuire v. Waste Management*, No. 2:09-cv-2591, 2011 U.S. Dist. LEXIS 16552, at *4 (D.S.C. Feb. 18, 2011).  Accordingly, Polycom has not waived its ability to file this §1404(a) motion.

Polycom has similarly retained its right and ability to enforce the forum selection clause in the U.S. Reseller Agreement.  While a party may waive the enforcement of a forum selection clause, "such waiver cannot be found lightly."  *Kettler Int'l, Inc. v. Starbucks Corp.*, 55 F. Supp. 3d 839, 849 (E.D. Va. 2014).  "A forum-selection clause…will not be deemed waived unless (1) the party invoking the clause has taken action inconsistent with it or has delayed its enforcement, and (2) the other party would be prejudiced by its enforcement."  *Id.* at 849-50.

Here, Polycom has not acted inconsistently with the forum selection clause by, for example, filing suit against directPacket in an unauthorized forum.  *See id.* at 850 (citing *Wachovia Bank Nat'l Ass'n v. EnCap Golf Holdings, LLC*, 690 F. Supp. 2d 311, 327 (S.D.N.Y. 2010)).  Nor has Polycom delayed its enforcement of the forum selection clause in any manner that would prejudice directPacket Research.  directPacket Research filed the Complaint on June 21, 2018 and the Court issued its order denying Polycom's Motion to Dismiss on October 4, 2018.  This case has not progressed significantly in the meantime.  The Court issued its first scheduling Order on January 15, 2019 (*see* ECF No. 32), and discovery is in its early stages. More specifically, the parties have exchanged discovery requests and provided initial objections and responses, but have not yet produced any privilege logs, issued any subpoenas or deposition notices, or held or scheduled any depositions.  Nor has directPacket Research served its infringement contentions or produced any documents.  Furthermore, the *Markman* process has

not yet begun – the parties are currently not scheduled to exchange claim terms to be construed until July 25, 2019 and the *Markman* hearing is not scheduled until October 25, 2019.  (*Id.*) Thus, based on the progress of this case, there will be no prejudice to directPacket Research and little substantive efforts lost if this Court enforced the forum selection clause found in the U.S. Reseller Agreement and this litigation were transferred to the Northern District of California.[1]

**B.     The Forum Selection Clause of the U.S. Reseller Agreement is Applicable to Plaintiff directPacket Research, Inc.**

Because the plaintiff in this action, directPacket Research, is an alter ego of directPacket Inc., the U.S. Reseller Agreement and the terms of the agreement are applicable to directPacket Research.  In determining whether one corporation is the alter ego of another, courts in the Fourth Circuit consider a number of relevant factors, including (1) overlap in ownership, officers, directors, and other personnel, (2) common office space, and (3) failure to observe corporate formalities and maintain proper corporate records.  *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 544 (4th Cir. 2013).  Here, the following evidence shows that directPacket Research is an alter ego of directPacket Inc.

*First***,** from the assignment records of the Asserted Patents,[2] it appears that directPacket Research changed its name to directPacket Inc. in 2008.  (Ex. 9.)  Pursuant to the name change, directPacket Research assigned the Asserted Patents to directPacket Inc.  (Exs. 10-11 (showing that applications 11/403,549, 11/403,552, and 11/403,548 were conveyed from directPacket

---

[1] While delay in filing a §1404(a) motion is similarly relevant to whether transfer is appropriate, *see, e.g.*, *Samsung Elecs. Co. v. Rambus Inc.*, 386 F. Supp. 2d 708, 725 (E.D. Va. 2005), the early phase of this litigation and lack of prejudice to directPacket Research, combined with the controlling weight placed on an enforceable forum selection clause in this §1404(a) analysis heavily favor transferring this matter to the Northern District of California.

[2] The following patents are currently asserted by directPacket Research in this action: U.S. Patent Nos. 7,710,978 (Application No. 11/403,549), 7,773,588 (Application No. 11/403,552), and 8,560,828 (Application No. 11/403,548).

Research to directPacket Inc.).)  directPacket Inc. signed the U.S. Reseller Agreement with Polycom in February 2010 and then assigned the Asserted Patents back to directPacket Research on June 7, 2011.  (Ex. 11.)[3]  Despite directPacket Research and directPacket Inc.'s formal exchanges regarding the Asserted Patents, Polycom's interactions with directPacket Research and directPacket Inc., as well as myriad sources of publicly available information described below, confirm that directPacket Inc. and directPacket Research operate as a single entity.

*Second*, directPacket Research and directPacket Inc. share employees and corporate officers.  For example, various publicly available documents identify Tom Opsahl as the president and director of directPacket Research (*see* Ex. 12, Ex. 13 at 11, Ex. 9 at Article 3 and signature page) as well as co-owner, president, and director of directPacket Inc.  (*See* Ex. 14, Ex. 11 at 3, Ex, 15 at 2, and Ex. 16 (identifying Mr. Opsahl as principal of OneVision Solutions – the d/b/a for directPacket Inc.).)  Similarly, various sources identify E. M. Riley, who signed the Reseller Agreements, as a director and president for directPacket Research (*see* Ex. 9 at Article 3, Ex. 11 at 3, and Ex. 13 at 11) and as a director of directPacket Inc. (*see* Ex. 15 at 2).  (*See also*, Ex. 17 (showing that E. M. Riley, a/k/a Ned Riley, is a principal at OneVision Solutions and directPacket Research)  Tom Opshal and E.M. Riley are two of the named inventors on the Asserted Patents and are also identified as directors of Netomd Holdings, Inc. – the parent corporation of both directPacket Research and directPacket Inc. (*See* Exs. 20, 32;  ECF No. 1 at Exs. A-C; ECF No. 4 (directPacket Research Rule 7.1 Disclosure)).

*Third*, directPacket Research and directPacket Inc. have the same address; each is associated with 909 Lake Carolyn Parkway, Suite 1800, Irving, Texas 75039.  (*See* ECF No. 1

---

[3]      directPacket Inc.'s assignment of the Asserted Patents also calls into question directPacket Research's standing to bring this lawsuit alone as the Assignment Agreement lists directPacket Research Inc. as desiring to "acquire jointly the entire right, title and interest of Assignor and to the Patents."  (Ex. 11 at 3.)

(June 21, 2018); Exs. 23, 24, 33, 34.)  Netomd Holdings, Inc. shares this same address.  (Ex. 21 at 1, Ex. 32.)

*Fourth,* various websites and records show that directPacket Research and directPacket Inc. share the same phone line, (972) 714-0540, and fax line, (972) 580-8435 (*Compare* Ex. 22 *with* Ex. 20.)

*Fifth*, directPacket Research and directPacket Inc. share the same website – www.directpacket.com.  A Google search for "direct packet research" and "direct packet inc" return different search results that both resolve to the URL www.directpacket.com .  (*Compare* Ex. 24 *with* Ex. 25 (note the search results are not identical).)  Moreover, the content of directPacket's website refers to both directPacket Research and directPacket Inc.  (*See, e.g.,* Ex. 18 (discussing directPacket Research in both the header and body of the webpage, but also showing that the copyright for the webpage is held by directPacket Inc.) and Ex. 23 (providing contact information for directPacket Inc. but also providing the ability to obtain more information about directPacket Research and its products).)  Additionally, the LinkedIn page for directPacket Research links to the website for directPacket Inc.'s d/b/a OneVision Solutions. (Ex. 26 (listing the website for directPacket Research as www.onevisionsolutions.com).)

*Sixth*, a publicly available article from 2012 reporting federal contracts awarded to companies in Texas lists that a federal contract was awarded to "Direct Packet Research dba OneVision Solutions, Irving, Texas."  (Ex. 27 at 2.)  As described above, OneVision Solutions is also identified as directPacket Inc.'s d/b/a.  Similarly, government contracts awarded to directPacket Research and directPacket Inc. since 2009 show that the two entities are assigned

the same Dun & Bradstreet ("DUNS") number.[4] (*See, e.g.,* Exs. 28-30.)[5]  Additionally, an April

23, 2018, Contract Purchase Order from Texas Southern University lists Direct Packet Research,

Inc. and One Vision Solutions together.  (Ex. 31.)

    **Seventh**, directPacket Research, doing business as One Vision Solutions, entered two of

the Reseller Agreements between the parties and directPacket Inc., also doing business as One

Vision Solutions, entered six other  Reseller Agreements.  (Exs. 1-8.)  Notably, in every case, it

was E.M. Riley, director and president for both directPacket Research and directPacket Inc., who

signed each of the Agreements with Polycom.  (*Id.*)

    The foregoing demonstrates that directPacket Research and directPacket Inc. are alter

egos.  And even if they were not, directPacket Research and directPacket Inc. are sufficiently

related that directPacket Research is properly subject to the forum selection clause in the U.S.

Reseller Agreement and any Reseller Agreement either directPacket entity entered.  *See, e.g.*,

*Golden State Orthopaedics, Inc. v. Howmedica Osteonics Corp.*, No. 14-cv-3073, 2014 U.S.

Dist. LEXIS 199136 (N.D. Cal. Oct. 31, 2014) ("when the conduct of third parties is closely

related to the contractual relationship between the signatories to a forum-selection clause, those

third parties should benefit from and be subject to forum selection clauses") (citation omitted);

*America Online, Inc. v. Huang*, 106 F. Supp. 2d 848, 857 n. 26 (E.D. Va. 2000) (same) (citing

---

    [4] A DUNS number is a unique nine-digit identifier for businesses.  *See* dun & bradstreet,
https://www.dnb.com/duns-number.html (last visited Jan. 28, 2019).  A DUNS number is used to
identify government contractors and track how federal money is allocated.  *See* Grants.Gov,
https://www.grants.gov/applicants/organization-registration/step-1-obtain-duns-number.html
(last visited Jan. 28, 2019).

    [5] Note that Ex. 28 and Ex. 29 show that directPacket Inc. and directPacket Research were
also both previously associated with the business address 4545 Fuller Dr. STE 326, Irving, TX
75038.

*Frietsch v. Refco, Inc.*, 56 F.3d 825, 827 (7th Cir. 1995); *Net2Phone, Inc. v. Superior Court*, 109

Cal. App. 4th 583, 587-88 (2003) (same).

### C.    directPacket Research Submitted to the Mandatory and Exclusive Jurisdiction of California

The parties here did not merely consider California a permitted forum.  directPacket

expressly agreed ███████████████████████████████████████████████████

██████████████████  (Ex. 1 at § 12.6.)  Despite this agreement, directPacket Research

brought this action in the Eastern District of Virginia.

The plain language of the Governing Law and Venue clause of the U.S. Reseller

Agreement shows that the parties intended compliance to be mandatory by requiring the parties

to submit to the jurisdiction of California – specifically, the Northern District of California –

rather than permissive.  *See, e.g.*, *BAE Sys.*, 884 F.3d at 470; *Northern Cal. Dist. Council of*

*Laborers v. Pittsburgh-Des Moines Steel Co.*, 69 F.3d 1034 (9th Cir. 1995) ("to be mandatory, a

clause must contain language that clearly designates a forum as the exclusive one").  Here, for

example, the Governing Law and Venue clause in the U.S. Reseller Agreement provides that:



(Ex. 1 at § 12.6 (emphasis added).)

There is no ambiguity as to the meaning or impact of this clause – the terms "any action,"

"must," "exclusively," and "in no other jurisdiction" clearly designate San Francisco, California

as the only place to litigate this matter.  Courts, including those in California and District Courts

in the Ninth and Fourth Circuits, routinely find similar language mandatory.  *See, e.g.*, *Northern*

*Cal. Dist. Council of Laborers*, 69 F.3d at 1037 (reviewing cases finding forum selection clauses

mandatory where they required disputes to be litigated "only" in one jurisdiction or where venue

"shall be deemed to be" in one jurisdiction); *Vault, LLC v. Dell Inc.*, No. 1:18-cv-00633, 2019 U.S. Dist. LEXIS 1622, at *9 (M.D.N.C. Jan. 4, 2019) (finding forum selection clause requiring the parties to "irrevocably submit and consent to the exclusive jurisdiction" of the stated forum mandatory); *Brady Mktg. Co. v. KAI USA, Ltd.*, No. 16-cv-02854, 2016 U.S. Dist. LEXIS 115877, at *10 (N.D. Cal. Aug. 29, 2016) ("[T]o be mandatory [a forum-selection clause] must be extremely deliberate in selecting a specific and exclusive venue and in indicating that all action[s] must be brought solely in that venue, and no other.") (citation omitted); *Quanta Computer Inc. v. Japan Communications Inc.*, 21 Cal. App. 5th 438 (2018) (parties agreed that forum selection clause requiring both parties to "submit all disputes arising out of or in connection with th[e] Agreement to the exclusive jurisdiction of the courts in the State of California" is mandatory).

That the Governing Law and Venue provision of the U.S. Reseller Agreement provide for state or federal jurisdiction does not alter this analysis or render the clause ambiguous.  In *Rojas-Lozano v. Google, Inc.*, for example, the District Court of Massachusetts transferred a case to the Northern District of California pursuant to a forum selection clause requiring the parties to litigate all claims arising out of or relating to an agreement "exclusively in the federal or state courts of Santa Clara County, California, USA."  159 F. Supp. 3d 1101, 1107 (N.D. Cal. 2016); *see also, e.g., Vault, LLC v. Dell Inc.*, 2019 U.S. Dist. LEXIS 1622, at *9-10 (forum selection clause requiring parties to "irrevocably submit and consent to the exclusive jurisdiction" of a federal court, or "if there is no basis for federal jurisdiction, then any claims must be brought" in state court is mandatory); *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 836 (N.D. Cal. 2018); (finding forum selection clause directing parties to try and litigate disputes "exclusively in Clark County, Nevada State and Federal Courts" mandatory and unambiguous); *Torres v. SOF Distrib.*

*Co.*, No. 3:10-cv-179, 2010 U.S. Dist. LEXIS 47448 (E.D. Va. May 13, 2010) (finding forum selection clause directing parties to file suit "only in the federal or state court" mandatory and unambiguous).  And because the instant dispute concerns patent infringement claims, the federal court of the Northern District of California is the proper court of competent jurisdiction.  *See* 28 U.S.C. §§ 1331, 1338.

Because the Governing Law and Venue provision in the U.S. Reseller Agreement is mandatory, *Atlantic Marine* applies, and the clause should be given "controlling weight" in evaluating the instant motion.  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013).

### D.    This Matter Falls Within the Scope of the U.S. Reseller Agreement

directPacket also cannot reasonably dispute that the issues raised in this litigation arise from or relate to the U.S. Reseller Agreement, and thus fall within the scope of the forum selection clause.

"When two sophisticated, commercial entities agree to a choice-of-law [or choice-of-forum] provision…the most reasonable interpretation of their actions is that they intended for the clause to apply to all causes of action arising from or related to their contract."  *Cal-State Business Prods. & Services, Inc. v. Ricoh*, 12 Cal. App. 4th 1666, 1676 (1993) (holding expansive interpretation of choice of law provisions should be afforded to "closely related" choice of forum provisions).  Where the parties do not agree to any exceptions to such provisions, it is reasonable to conclude that "arising from or related to" language applies not only to disputes concerning the contract itself, but also to "any cause of action based on the relationship created by the contract."  *Id.* (citing *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. App. 4th 459, 468-69 (1992)).  By agreeing to bring any action or proceeding ████████████ ████████████████████████████████ in Northern California and agreeing that California

16

law governs interpretation of the Agreement, directPacket Research confirmed that the present patent dispute concerning Polycom products directPacket Research sold and continues to sell to end-users under the terms of the Reseller Agreements must be brought in the courts of California. Moreover, directPacket Research ███████████████████████████████ ███████████████████████████████████████████████ (*See* Ex. 2 at § 10.8; Ex. 3 at § 10.9; Exs. 4-5 at § 11.8; Ex. 6-7 at § 15(g)).)

Federal courts also confirm that while disputes "arising out of" a particular agreement "apply only to disputes relating to the interpretation and performance of the contract itself," forum selection clauses also covering disputes "relating to" a particular agreement "apply to any disputes that reference the agreement or have some logical or causal connection to the agreement." *Sun v. Adv. China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) (citation omitted); *see also Bartles v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 678 (4th Cir. 2018) ("'in connection with' language broadens the scope of the clause beyond pure contract claims and extends it to every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute") (citation omitted).

This litigation is related and maintains a logical connection to the U.S. Reseller Agreement because the Agreement forms the basis of a number of Polycom's affirmative equitable defenses. (ECF No. 28.) With respect to Polycom's waiver defense, for example, Polycom must demonstrate "by clear and convincing evidence that [the patentee's] conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished." *Hynix Semiconductor Inc. v. Rambus, Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011) (citing *Qualcomm, Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1020 (Fed. Cir. 2008)).

Here, the instant litigation is wholly inconsistent with directPacket's conduct under the U.S. Reseller Agreement, which requires and encourages directPacket's use, promotion, and service of the allegedly infringing Polycom products. More specifically, the U.S. Reseller Agreement ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

including those that directPacket Research now accuses of infringing. (Ex. 1 at §§ 6.3.1, 6.3.2.)

In the context of its bargained-for conduct under the U.S. Reseller Agreement, directPacket led Polycom to reasonably infer that because it used and understood Polycom's products, it consented to Polycom's alleged infringement of the Asserted Patents. Thus, directPacket waived its right to enforce the Asserted Patents against Polycom. Given this relationship between the parties, Polycom is similarly entitled to a finding that directPacket consented or acquiesced to Polycom's allegedly infringing conduct and further, has unclean hands precluding its assertion of those patents given its role with respect to the accused products. Moreover, because the activity condoned under the Reseller Agreement is so inherently connected to Polycom's accused products, directPacket knew or should have known of Polycom's allegedly infringing activities giving rise to its claims at least eight years before filing the complaint on June 21, 2018. (*See* ECF No. 28.) This delay further supports a host of equitable defenses, including laches, estoppel, acquiescence and implied license, for instance.

Cases decided in this District, *VS Technologies., LLC v. Twitter, Inc.*, and *Centripetal Networks, Inc. v. Keysign Technologies., Inc.*, wherein this Court found that the forum selection

clause between the parties in each case did not govern patent infringement disputes, do not compel a different result. *See VS Technologies., LLC v. Twitter, Inc.*, No. 2:11-cv-43, 2011 U.S. Dist. LEXIS 157536 (E.D. Va. June 28, 2011); *Centripetal Networks, Inc. v. Keysign Technologies., Inc.*, No. 2:17-cv-383, ECF No. 55 (E.D.Va. Nov. 15, 2017) (attached as Ex. 35). In *VS Technologies*, this Court found that the forum selection clause in an agreement between the parties did not extend to the plaintiff's infringement claim because the agreement at issue concerned only the plaintiff's agreement to abide by Twitter's Terms and Services to use the social networking site. 2011 U.S. Dist. LEXIS 157536 at *14-16. The Court explained that the forum selection clause did not contemplate cases brought in federal courts and further commented that enforcing a forum selection clause to which every user of a social media site agrees would establish precedent that would "foster satellite litigation in every patent case involving a social networking market participant." *Id.* at *16-17.

In *Centripetal Networks*, this Court followed *VS Technologies* in finding a forum selection clause contained in an NDA between the parties did not control in a patent infringement case given the subject matter of the agreement. 2:17-cv-383, ECF No. 55 at 8-9. Here, by contrast and as described above, the U.S. Reseller Agreement necessarily relates to the instant dispute because the Agreement authorizes directPacket's sale, promotion and support of the very products it now accuses of infringement and provides a substantive basis for Polycom affirmative defenses.[6]

Where, as here, enforcement of a contract provision is a defense to a claim and sets forth a non-frivolous dispute concerning the terms of an agreement (*i.e.*, more than a "bare

___
[6] While directPacket has accused network components supplied by Polycom of infringement, many of the claims of the Asserted Patents cover specific network configurations. As a Polycom reseller, directPacket is the one that encourages end users to assemble Polycom's network components into configurations purportedly covered by directPacket's patents.

allegation"), the Federal Circuit has found that there is no question that the dispute relates to or arises out of the agreement. *See Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 13579 (Fed. Cir. 2011). Because the language of the Governing Law and Venue provision of the U.S. Reseller Agreement broadly encompasses disputes "arising from or relating to" the same, and because the Agreement forms the basis of a number of Polycom's affirmative equitable defenses, this matter is properly within the scope of Polycom and directPacket's Agreement.

### E. The Forum Selection Clause is Reasonable

A forum selection clause is presumptively valid and enforceable, unless enforcement is shown by the resisting party (*i.e.*, directPacket Research) to be "unreasonable' under the circumstances." *Bremen*, 407 U.S. at 10. directPacket Research cannot demonstrate that enforcing the parties' agreed-upon forum selection clause is unreasonable, induced by fraud, fundamentally unfair, or in contravention of public policy. *See Albemarle Corp. v. Astrazeneca UK Ltd.*, 628 F.3d 643, 651 (4th Cir. 2010) (identifying and summarizing relevant *Bremen* reasonableness factors).

No evidence or facts exist to suggest that the Governing Law and Venue provision of the U.S. Reseller Agreement was induced by fraud or overreaching. Courts routinely find forum selection clauses negotiated by sophisticated parties such as Polycom and directPacket Research during arms-length negotiations reasonable. *Allred v. Innova Emergency Med. Assocs., P.C.*, No. 18-cv-03633, 2018 U.S. Dist. LEXIS 169527, at *13 (N.D. Cal. Oct. 1, 2018) (such clauses are "presumptively valid") (quoting *Plum Creek Wastewater Auth. v. Aqua-Aerobic Sys.*, 597 F. Supp. 2d 1228, 1230 (D. Colo. 2009); *see also Coastal Mechs. Co. v. Def. Acquisition Program Admin.*, 79 F. Supp. 3d 606 (E.D. Va. 2015) (finding forum selection clause reasonable where "both parties are sophisticated business entities"). To the extent directPacket Research asserts the forum selection clause of the U.S. Reseller Agreement is unreasonable because it is based on

fraud, it would need to, and cannot, establish that the "inclusion of the forum-selection clause *itself* was the product of fraud or coercion," particularly where directPacket agreed to similar choice of law and choice of venue provisions in seven separate state Reseller Agreements between the parties. *Zaklit v. Global Linguist Solutions, LLC*, No. 1:14-cv-314, 2014 U.S. Dist. LEXIS 92623, at *25 (E.D. Va. July 8, 2014) (emphasis in original).

Transferring this matter to the Northern District of California also will not deprive directPacket Research of its day in court; there is no reason that the Northern District of California is not adequately equipped to hear directPacket Research's claims.  In fact, this Court already found both that California's Northern District is a proper forum and that litigating this case in California would be more convenient for Polycom, and the difference between litigating in the Northern District of California and this Court is negligible for directPacket Research. (ECF No. 27 at 7-8.)  Similarly, it will not be "fundamentally unfair" to directPacket Research to apply California law in construing and evaluating the forum selection clause.  As noted above, courts in the Fourth Circuit have already held that they "must honor the forum selection clause 'as construed under the law specified in the agreement's choice-of-law provision'" – *i.e.*, under California's state law. *Nitro Elec. Co.*, 2017 U.S. Dist. LEXIS 210776, at *5-6 (citing *Albemarle Corp.*, 628 F.3d at 650-51).  directPacket Research cannot establish that application of this law will deprive it of any remedy in this action.

Enforcing the forum selection clause also would not contravene any public policy in the chosen forum of California.  Indeed, "California favors contractual forum selection clauses so long as they are entered into freely and voluntarily." *Verdugo*, 237 Cal. App. 4th at 146. Nothing in the U.S. Reseller Agreement would "substantially diminish the rights of California residents in a way that violates [its] public policy," and it is directPacket Research's "substantial

burden" – which it cannot carry – to prove that the forum selection clause should *not* be enforced.  *Id.* at 147.

Finally, the governing law and venue clause is reasonable in directing the parties to litigate in the Northern District of California because Polycom is headquartered there and is "logically connected" to the agreed upon forum.  *See id.* at 147 (ECF No. 27 at 1.)

Thus, Polycom is entitled to a finding that the forum selection clause contained in the U.S. Reseller Agreement and those found in multiple state reseller agreements between the parties are enforceable and reasonable.

## IV.   CONCLUSION

For the foregoing reasons, this case should be transferred to the Northern District of California.

Date: February 15, 2019                           Respectfully submitted,

                                                                    */s/*
                                                          William R. Poynter (VSB No. 48672)
                                                          Kaleo Legal
                                                          4456 Corporation Lane, Suite 135
                                                          Virginia Beach, VA 23462
                                                          757.238.6383
                                                          757.304.6175 (facsimile)
                                                          wpoynter@kaleolegal.com

                                                          Goutam Patnaik (*pro hac vice*)
                                                          Tuhin Ganguly (*pro hac vice*)
                                                          Ryan H. Ellis
                                                          Pepper Hamilton LLP
                                                          Hamilton Square
                                                          600 Fourteenth Street, N.W.
                                                          Washington, DC 20005-2004
                                                          202.220.1200
                                                          202.220.1665 (facsimile)
                                                          patnaikg@pepperlaw.com
                                                          gangulyt@pepperlaw.com
                                                          ellisr@pepperlaw.com

Suparna Datta (*pro hac vice*)
Brittanee L. Friedman (*pro hac vice*)
Pepper Hamilton LLP
19th Floor, High Street Tower
125 High Street
Boston, MA 02110-2736
617.204.5100
617.204.5150 (facsimile)
dattas@pepperlaw.com
friedmbr@pepperlaw.com

William E. Devitt (*pro hac vice*)
John A. Marlott (*pro hac vice*)
Rita J. Yoon (*pro hac vice*)
Jones Day
77 West Wacker Drive
Chicago, IL 60601
312.782.3939
312.782.8585 (facsimile)
wdevitt@jonesday.com
jamarlott@jonesday.com
ryoon@jonesday.com

Yury Kalish (VSB No. 87680)
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
202.879.3939
202.626.1700
ykalish@jonesday.com

*Counsel for Defendant Polycom, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of February 2019, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following registered counsel for Plaintiff:

> Terence P. Ross
> Christopher B. Ferenc
> Sean Scott Wooden
> KATTEN MUCHIN ROSENMAN LLP
> 2900 K Street, N.W.
> Suite 200
> Washington, D.C. 20007
> Telephone: (202) 625-3500
> Fax: (202) 298-7570
> terence.ross@kattenlaw.com
> christopher.ferenc@kattenlaw.com
> sean.wooden@kattenlaw.com
>
> Yashas Kedar Honasoge
> KATTEN MUCHIN ROSENMAN LLP
> 525 W Monroe St, Suite 1600
> Chicago, IL 60661-3693
> Telephone: (312) 902-5200
> Fax: (312) 902-1061
> yashas.honasoge@kattenlaw.com
>
> Stephen Edward Noona
> KAUFMAN & CANOLES, P.C.
> 150 W. Main St.
> Suite 2100
> Norfolk, VA 23510
> Telephone: (757) 624-3239
> Fax: (888) 360-9092
> senoona@kaufcan.com

> _____/s/_____
>
> William R. Poynter (VSB No. 48672)
> Kaleo Legal
> 4456 Corporation Lane, Suite 135
> Virginia Beach, VA 23462
> 757.238.6383
> 757.304.6175 (facsimile)
> wpoynter@kaleolegal.com