UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DIRECTPACKET RESEARCH, INC.,
    Plaintiff,

v.                                          Civil Action No. 2:18cv331

POLYCOM, INC.,
    Defendant.

## ORDER

directPacket Research, Inc. ("directPacket Research") brings this patent infringement action. Before the Court is a new Motion to Transfer Venue under 28 U.S.C. § 404(a) filed by Defendant Polycom, Inc. ("Polycom"). The parties' requests for a hearing on this Motion are **DENIED**. *See* ECF Nos. 25, 26. For the reasons stated herein, the Motion to Transfer Venue is **GRANTED**. This case is **TRANSFERRED** to the jurisdiction of the United States District Court for the Northern District of California.

## I.    BACKGROUND

The disputed patents were filed April 13, 2006 and issued by the United States Patent and Trademark Office on May 4, 2010, August 10, 2010, and October 15, 2013. ECF No. 93 at 2 n.1. In the period between the patents' filing and issuance, directPacket Inc. d/b/a OneVision Solutions ("directPacket Inc."), Plaintiff directPacket Research's sister company, agreed to sell Polycom's software products. ECF No. 49 at 2 n.1. The resulting reseller contracts set the terms under which directPacket Inc., resold Polycom's products nationally and in particular states. ECF Nos. 50-1– 50-8. The infringement allegedly occurred after the companies conferred in 2010 and 2011 to strengthen their business relationship and explore merger. ECF No. 1 at 11–14. Plaintiff asserts

1

that it became aware of the alleged infringement and its potential grounds for relief in late 2015. ECF No. 94 at 3.

Polycom moves to transfer venue pursuant to forum-selection clauses contained in reseller contracts between Polycom and directPacket Inc. Basic contract terms such as the start date, the expiration date, and the breadth of forum-selection clauses differed among the reseller contracts. *See* ECF Nos. 50-1—50-8. The Primary Reseller Agreement, under which directPacket Inc. resells Polycom's Video Border Proxy, RealPresence Access Director, and RealPresence Collaboration Server products nationwide, became effective on February 1, 2010 and has been renewed annually. ECF No. 93-2 at 1. The New York "Centralized" contracts were effective beginning in 2007 and 2008, both expiring in 2009. ECF No. 93 at 7 n.5. The New York reseller contracts were entered into in 2014 and 2016. ECF No. 98 at 4. The Utah Agreement became effective May 18, 2012 and expired in 2016. ECF No. 93 at 3, 5. The Oklahoma Agreement was entered into March 2014. ECF No. 50-5 at 4. The Florida Agreement became effective October 2012. ECF No. 50-3 at 5.

## II. QUESTION PRESENTED

The Court examines the contracts invoked by Polycom to determine which forum-selection clauses, if any, are valid and apply to this action. The Court then considers whether the forum-selection clauses can be enforced against the parties. Finally, the Court determines whether Polycom waived its right to assert the forum-selection clauses under 28 U.S.C. § 1404(a).

## III. STANDARDS OF LAW REGARDING CLAUSES IN THIS ACTION

When parties agree to litigate in a specified forum, "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62 (2013). "[A]bsent a showing that the chosen forum is unreasonable or was imposed by fraud or unequal bargaining

power, the parties' choice should be enforced." *Vulcan Chem. Tech., Inc. v. Barker*, 297 F.3d 332, 339 (4th Cir. 2002). When a forum-selection clause is valid, "the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Atl. Marine Const. Co.*, 571 U.S. at 64.

IV. ANALYSIS

Most of the reseller agreements between directPacket Inc. and Polycom include forum-selection clauses that limit their applicability to claims brought "in connection [t]herewith." ECF No. 50. However, the forum-selection clause in the "Primary Reseller Agreement" applies to any "action or proceeding arising from *or relating to*" the Agreement. ECF No. 50-1 (emphasis added). Similarly broad language, "Any dispute regarding this Agreement shall be governed by," was found to "establish a logical and causal connection between . . . agreements and the copyright infringement actions" in a recent case. *In re McGraw-Hill Glob. Educ. Holdings, LLC*, 909 F.3d 48, 68 (3d Cir. 2018). A lawsuit for patent infringement is an "action or proceeding . . . relating to," even if not "arising from," a contract for the sale of products derived from those patents at issue. *See Methode Electr., Inc. v. Delphi Auto. Sys. LLC*, 639 F. Supp. 2d 903, 909 (N.D. Ill. 2009) ("[I]t's reasonable to infer [the parties'] intent that the clause apply to a patent dispute regarding the very weight-sensing pads that Methode supplied to Delphi under the contract . . . . And while the contract may not address explicitly propriety rights to the design of the weight-sensing pads, it is still the most recent incarnation of a long-standing relationship that grew out of, and is therefore connected with, the design and manufacture of those pads.").

Here, the allegedly infringed patents were incorporated into the products resold in the Primary Reseller Agreement. ECF No. 93 at 2–3; ECF No. 49 at 19 ("[T]he Agreement authorizes directPacket's sale, promotion and support of the very products it now accuses of infringement

and provides a substantive basis for Polycom affirmative defenses."). Therefore, "the language of the forum selection clause is broad enough to encompass actions in which the agreements are raised as an affirmative defense." *In re McGraw-Hill Glob. Educ. Holdings, LLC*, 909 F.3d at 68 ("McGraw-Hill obtained access to the photographs through its licensure agreements with Corbis . . . . It may be said that the 'dispute' here is whether McGraw-Hill violated the plaintiffs' copyrights by exceeding the scope of its licenses.); *see also Cuno, Inc. v. Hayward Indust. Prod.*, Inc., No. 03 Civ. 3076(MBM), 2005 WL 1123877, at *5 (S.D.N.Y. May, 10 2005) ("[W]here the forum selection clause is written broadly, as it is here, claims beyond those alleging breaches of the contract that contains the clause are covered.").

The infringement claims neither arise from, nor relate to, contracts for the sale of products that predate the patents at issue. The claims also do not arise from nor relate to contracts that expired before the allegedly infringing conduct commenced because the contracts were not valid at the time the claims accrued. *See Video Streaming Sol. LLC v. Microsoft Corp.*, No. 13 C 7031, 2014 WL 2198480, at *4 (N.D. Ill. May 27, 2014) ("VSS seeks damages for infringement that occurred *after* the contract's expiration. The court agrees with VSS that the forum-selection clause of the Contract is not applicable to its claims here.") (emphasis in original). Polycom and directPacket Inc. entered into the Primary Reseller Agreement before the allegedly infringed patents were issued. ECF No. 98 at 14. However, the Primary Reseller Agreement was renewed annually, which constitutes directPacket Inc.'s repeated ratification of the forum-selection clause *after* the patents were issued. ECF No. 98 at 7, 14. Because the Primary Reseller Agreement is still in effect, the alleged infringement did not commence after the contract expired. ECF No. 98 at 14. Therefore, the claims relate to the Primary Reseller Agreement.

The language in the Primary Reseller Agreement is broad enough to apply to an action for patent infringement. Also, that contract's effective date and repeated renewal coincide with the patents' alleged infringement. Due to the Primary Reseller Agreement's breadth and the timeline of the patents' issuance and of the alleged infringement, the forum-selection clause applies to this dispute.

   a. Enforcement Against a Non-signatory

Signatories to a contract such as Polycom may enforce forum-selection clauses contained therein against non-signatories. *See In re McGraw-Hill Glob. Educ. Holdings, LLC*, 909 F.3d at 69 (holding that "where the copyright holder is . . . [a] closely related party *and* the natural language of the forum selection clause is broad enough to cover a copyright claim, [the Court] would ordinarily bind the non-signatory.") (emphasis in original); *see also Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995). "A forum selection clause may bind non-parties to a contract if the relationship between the non-party and the signatory [is] sufficiently close," and enforcement is "foreseeable by virtue of the relationship between the signatory and the party sought to be bound." *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 369 (S.D.N.Y. 2011) (internal quotation marks omitted); *see also Magi XXI, Inc. v. Stato Della Citta del Vaticano*, 714 F.3d 714, 722–23 (2d Cir. 2013) ("[A] non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is "closely related" to another signatory . . . . [T]he relationship between the non-signatory and that (latter) signatory must be sufficiently close that the non-signatory's enforcement of the forum selection clause is 'foreseeable' to the signatory against whom the non-signatory wishes to enforce the forum selection clause."). The non-signatory need not be a third-party beneficiary to be bound by the

contract. *See In re Optimal U.S. Litig.*, 813 F. Supp. 2d at 369; *see also Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 n.7 (7th Cir. 1993).

It was reasonably foreseeable that Polycom would enforce the forum-selection clause against directPacket Research. directPacket Inc. resells products for Polycom that are allegedly derived from directPacket Research's patents. The entities are sophisticated litigants with several years of business dealings, as reaffirmed annually in the Primary Reseller Agreement, *supra*.

Additionally, enforcement of terms is foreseeable when entities share corporate officers. *See LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 3d 147, 161 (E.D.N.Y. 2012); *Nanopierce Tech., Inc. v. Southridge Capital Mgm't LLC*, No. 02 Civ. 0767(LBS), 2003 WL 22882137, at *6 (S.D.N.Y. Dec. 4, 2003). Ned Riley, Director and President of directPacket Research, signed contracts, including the Primary Reseller Agreement, on behalf of directPacket Inc. ECF No. 98 at 4 n.3. He is also listed as one of the inventors of the patents at issue. ECF No. 1, Exhibits A–C. Accordingly, Plaintiff cannot claim surprise when its own leadership ostensibly reviewed and ratified the terms of its sister company's reseller agreement with Polycom. Plaintiff had sufficient constructive notice of the terms governing its sister company's selling of products under a renewable contract for Plaintiff's alleged tortfeasor.

Plaintiff argues that the "proper focus of the 'closely related' analysis is not the relationship between the signatory and non-signatory . . . [but] whether the non-signatory's conduct is 'so closely related to the contractual relationship, both parties and non-parties should benefit from and be subject to a forum selection clause contained in the contract.'" ECF No. 94 at 5 (quoting *Allianz Ins. Co. of Can. v. Cho Yang Shipping Co.*, 131 F. Supp. 2d 787, 791 (E.D. Va. 2000)). Plaintiff contends that judicial consideration of the relationship between directPacket Inc. and directPacket Research would "eviscerate" the corporate veil. *Id.* at 5 n.2. However, the foreseeability of a

clause's enforcement against a non-signatory entity arising from its close relationship with its signatory sister company requires no veil piercing. The sister companies need not operate as alter egos for Polycom to establish foreseeability. *Cf. Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 336 (S.D.N.Y 2018) ("Non-signatory alter-egos, corporate executive officers, and successors-in-interest have all, at least in some instances, satisfied the 'closely related' test.").

Based on the close relationship between directPacket Research and directPacket Inc., it was foreseeable to directPacket Research that Polycom would enforce the forum-selection clause in its contract with directPacket Inc. Therefore, the contract may be enforced by signatory Polycom against non-signatory directPacket Research.

b. Waiver of Enforcement

Plaintiff directPacket Research argues that "Polycom chose not to assert the forum selection clause originally and, therefore, waived any argument that it applies now."[1] ECF No. 94 at 11. A party may waive a contractual right "impliedly, through acts or conduct that naturally lead the other party to believe that the right has been *intentionally* given up .... The intent to waive must be clear, as conduct with ambiguous meaning will not support a waiver defense." *Bartels by and through Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 678 (4th Cir. 2018) (internal quotation marks omitted) (emphasis in original); *see also Kettler Int'l, Inc.*, 55 F. Supp.

---

[1] Courts often find a waiver when a *plaintiff* asserts a forum-selection clause after availing itself of a court in another jurisdiction. *See Coastal Mech. Co. v. Def. Acquisition Program Admin.*, 79 F. Supp. 3d 606, 612 (E.D. Va. 2015) ("Generally, these conditions are satisfied when a party disregards a forum-selection clause and sues in an unauthorized forum."); *see also Kettler Int'l, Inc. v. Starbucks Corp.*, 55 F. Supp. 3d 839, 851 (E.D. Va. 2014) ("While Defendant may have had good reasons to choose the California forum, the fact remains that it was the one who chose to file a third-party complaint in California."); *Wachovia Bank Nat. Ass'n v. EnCap Golf Holdings, LLC*, 690 F. Supp. 2d 311, 328 (S.D.N.Y. 2010) ("[W]hen a party disregards a forum selection clause and sues on a contract in an unauthorized forum, it waives the forum selection clause only for the specific claim it pursues.") (internal citation omitted); *but cf. SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Europe GmbH*, 839 F.3d 422, 427 (5th Cir. 2016) ("[W]e cannot conclude that BKE's filing of the Personal Guarantee Litigation resulted in waiver of its right to enforce the forum selection clause in the Franchise Agreement Litigation."). Here, Defendant and signatory Polycom asserts the clause as a defense.

3d at 849–50 ("A forum-selection clause . . . will not be deemed waived unless (1) the party invoking the clause has taken action inconsistent with it or has delayed its enforcement, and (2) the other party would be prejudiced by its enforcement.") (internal citation omitted). "[T]here is no bright-line rule for determining whether waiver has or has not occurred." *Wachovia Bank Nat. Ass'n*, 690 F. Supp. 2d at 328.

Polycom allegedly "waived enforcement of the forum selection clauses by waiting eight months to assert them, during which time it filed a number of substantive pleadings with the Court and participated in a Rule 16(b) Conference with the Court — all without ever mentioning, let alone asserting, the Reseller Agreements and forum selection clauses."[2] ECF No. 62 at 3. Polycom counters that it was diligent in evaluating the forum-selection clauses' enforceability. ECF No. 93 at 11. Polycom previously attempted to transfer this case but did not cite the reseller contracts. *See* ECF No. 18. In February 2019, Polycom retained new counsel who allegedly "evaluated the record and Polycom's defenses in the matter anew." ECF No. 93 at 11. Just one week after Polycom's new counsel appeared in this action, counsel filed the instant Motion. *See* ECF Nos. 36, 48. New counsel's immediacy in invoking the clause fails to render Polycom's prior inaction dispositive.

It is not "clear" that Polycom "intentionally" waived the forum-selection clause in the Primary Reseller Agreement. New counsel's swift assertion of the clause following Polycom's initial failure to raise it while challenging venue would not "naturally lead [Plaintiff] to believe that the right has been *intentionally* given up." *Bartels by and through Bartels*, 880 F.3d at 678. In light of the foregoing and the deference afforded negotiated terms in valid contracts, Polycom has not waived its right to assert the forum-selection clause.

---

[2] *But cf. Coastal Mech. Co.*, 79 F. Supp. 3d at 612 ("[M]ere inconvenience and expense are insufficient to render enforcement of a forum-selection clause unreasonable.").

V.  CONCLUSION

The parties' requests for a hearing are **DENIED**. *See* ECF Nos. 25, 26. For the reasons stated herein, the Motion to Transfer Venue (ECF No. 48) is **GRANTED**. This case is **TRANSFERRED** to the jurisdiction of the United States District Court for the Northern District of California. The Clerk is **REQUESTED** to forward copies of this Order to the Clerk of the United States District Court for the Northern District of California and to all counsel of record.

**IT IS SO ORDERED.**

/s/
Arenda L. Wright Allen
United States District Judge

July 3rd, 2019
Norfolk, Virginia